CHARLES H. HORN (SBN 63361)
CARLA MENINSKY (SBN 233470)
LeClairRyan, LLP
44 Montgomery Street, Thirty-first Floor
San Francisco, CA 94104
Telephone: (415) 391-7111
Facsimile: (415) 391-8766

Attorneys for Defendant
BRAINFM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA RIVERA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> BRAINFM, INC. a Delaware corporation and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2-19-cv-1217-R-GJS <br><br> **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT BRAINFM, INC.'S MOTION TO DISMISS** <br><br> DATE: May 6, 2019 <br> TIME: 10:00 a.m. <br> PLACE: Courtroom 880, 8th Floor <br><br> Assigned to Hon. Manuel L. Real <br><br> *Complaint Filed: February 19, 2019* <br> *Trial Date: TBD* |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Federal Rule of Evidence section 201, Defendant BrainFM, Inc. ("Defendant") respectfully requests that the Court take judicial notice of the following document, which is attached as an exhibit hereto:

**Exhibit A** is a true and correct copy of the California Senate Judiciary Committee Bill Analysis of Sen. Bill No. 340 (2009-2010 Reg. Sess.) as amended April 2, 2009, for hearing on April 14, 2009, at page 6. Judicial notice of this document is uncontroversial as it is not reasonably subject to dispute.

The Court may properly consider matters that are proper subjects of judicial

1
RJN ISO DEF. BRAINFM, INC.'S MOTION TO DISMISS

notice in ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The Court may also properly take notice of state legislative history, as it is an '[o]fficial act[] of the legislative…department[] of a[] state of the United States." Evid. § Code 452(c); Post v. Prati, 90 Cal. App. 3d 626, 634 (1979).

Accordingly, Defendant requests that the Court take judicial notice of **Exhibit A**, at page 6, in considering Defendant's Motion to Dismiss.

Respectfully submitted,

DATED: March 14, 2019                     LeClairRyan, LLP


By: /s Carla Meninsky
    CHARLES H. HORN
    CARLA MENINSKY

    Attorneys for Defendant
    BRAINFM, INC.

# EXHIBIT A

SENATE JUDICIARY COMMITTEE
Senator Ellen M. Corbett, Chair
2009-2010 Regular Session

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

## SUBJECT

Advertising: Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis. This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

(This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements. Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals. Consumers complained that they were unaware of and had

(more)

SB 340 (Yee)
Page 2 of 7

not requested the automatic renewals until they either received a bill or a charge on their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case. After receiving numerous consumer complaints, the Attorneys General of 23 states, including California, launched an investigation into Time's automatic renewal subscription offers. In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that includes a number of reforms to automatic renewals that Time sends to their customers. Those reforms include, among others, expanded disclosure requirements and customers' affirmative consent to automatic renewals. (*See* Comment 2 for details.)

## CHANGES TO EXISTING LAW

Existing law, the Unfair Competition Law (UCL), provides that unfair competition means and includes any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False Advertising Act (FAA). (Bus. & Prof. Code Sec. 17200 et seq.)

Existing law, the FAA, includes the following:
- prohibits any person with the intent, directly or indirectly, to dispose of real or personal property, to perform services, or to make or disseminate or cause to be made or disseminated to the public any statement concerning that real or personal property that is untrue or misleading and known or should be known to be untrue or misleading; and
- prohibits any person from making or disseminating any untrue or misleading statement as part of a plan or scheme with the intent not to sell that personal property or those services at the stated or advertised price. (Bus. & Prof. Code Sec. 17500.)

Existing law provides that any violation of the FAA is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by both. (Bus. & Prof. Secs. 17500, 17534.)

Existing law provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Bus. & Prof. Code Sec. 17536.)

Existing law provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief. (Bus. & Prof. Code Sec. 17204.)

Existing law provides for injunctive relief, restitution, disgorgement, and civil penalties. (Bus. & Prof. Code Secs. 17203, 17206.)

SB 340 (Yee)
Page 3 of 7

This bill would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:
1. All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.
2. Both of the following:
a. on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and
b. the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

This bill would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

This bill would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

This bill would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information. The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

This bill would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order. In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms. The automatic

SB 340 (Yee)
Page 4 of 7

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations,""Continuous Renewal Service Terms," or other similar description.

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

This bill would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

This bill would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

This bill would define key terms, including "automatic renewal" and "automatic renewal terms." (*See* Comment 4.)

## COMMENT

1. Stated need for the bill

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to. The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.
>
> A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations. The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions. The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.

### 2. Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with Attorneys General; SB 340 modeled after the Assurance

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers. Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science. Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers. The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election." The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal. (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time. In the Assurance, Time agreed to:
- provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer. Senate Bill 340 is modeled in large part after the Assurance.

### 3. Remedies available under the bill

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.

SB 340 (Yee)
Page 6 of 7

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. <u>Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.</u>

4. <u>Key terms defined</u>

This bill would define the following key terms:
    a. "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
    b. "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
- that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
- that the customer has the right to cancel;
- that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
- the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
- that the price paid by the customer for future automatic renewal terms may change; and
- the minimum purchase obligation, if any.

    c. "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
    d. "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5. <u>Recording of telephone automatic renewal offers</u>

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices. The rule requires, among other things, that telemarketers make

SB 340 (Yee)
Page 7 of 7

and maintain an audio recording of all telephone solicitations. (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6. Author's amendments

On page 3, line 17, insert:
(c) "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.

Support: California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

Opposition: None Known

## HISTORY

Source: Author

Related Pending Legislation: None Known

Prior Legislation: None Known

************

1 | Brianna Rivera, et al. v. BrainFM, Inc., et al
2 | USDC of Central District of California - CASE NO.: 2:19-CV-1217 R (GJSX)

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States, employed in the County of San Francisco, California, over the age of eighteen years, and not a party to the within cause. My business address is 44 Montgomery Street, Suite 3100, San Francisco, CA 94104

On the date last shown below, I served the foregoing

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT BRAINFM, INC.'S MOTION TO DISMISS**

On the interested partied in said action:

Scott J. Ferrell, Esq.
PACIFIC TRIAL ATTORNEYS
A Professional Corporation
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Telephone: (949) 706-6464
Email: SFerrell@pacifictrialattorneys.com

in the manner set forth below.

__x__ (VIA U.S. MAIL) I placed for collection and deposit in the U.S. mail, copies of the above document(s) at 44 Montgomery St., Suite 3100, San Francisco, CA 94104, in a sealed envelope, addressed as above. I am readily familiar with the practice of LECLAIRRYAN LLP for the collection and process of correspondence

1
CERTIFICATE OF SERVICE
906170987-1

for mailing with the U.S. Postal Service. In accordance with the ordinary course of business, the above documents would have been deposited for first-class delivery on same day, with postage thereon fully prepaid

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on March 14, 2019 at San Francisco, California.

By _/s/ Judy M. Olson_
Judy M. Olson

2
CERTIFICATE OF SERVICE

906170987-1